**2007 BNH 018**        Note:  This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 05-11821-JMD
                                                                                                        Chapter 7
Frederica I. Jewett,
        Debtor


Michael Askenaizer, Chapter 7 Trustee,
        Plaintiff

v.                                                                                                      Adv. No. 05-1130-JMD

Roger May,
        Defendant


*Marc McDonald, Esq.*
*Ford, Weaver & McDonald, P.A.*
*Portsmouth, New Hampshire*
*Attorney for Plaintiff*

*Roger May*
*Pro se Defendant*


### MEMORANDUM OPINION

### I.  INTRODUCTION

Michael Askenaizer, the chapter 7 trustee (the "Plaintiff"), filed the above captioned adversary proceeding on August 11, 2005, seeking a determination that a transfer of property from Frederica Jewett (the "Debtor") to her former son-in-law, Roger May (the "Defendant"), is

avoidable as a fraudulent transfer pursuant 11 U.S.C. § 548(a)(1)(B).[1]  The Court held a one-day trial on May 25, 2006.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Plaintiff seeks to set aside a pre-petition transfer made by the Debtor to the Defendant.  The Debtor is the former mother-in-law of the Defendant.  The transfer consisted of a 1.860-acre parcel of land with a residence on it that was the Defendant's home of sixteen years (the "Property").  On March 17, 2005, the Debtor transferred title to the Property to the Defendant by quitclaim deed (the "Transfer").  The Defendant did not pay any cash at the time of the Transfer and the quitclaim deed was notated as being "non-contractual and not subject to transfer taxes."  The Debtor then filed her bankruptcy petition on May 4, 2005, forty-five days after the Transfer was made (the "Petition Date").

The relationship between the Debtor and the Defendant is important to the resolution of this case.  In 1988 the Debtor transferred title to the Property (without any improvements) to her daughter, Lisa May, and the Defendant (collectively the "Mays") as a wedding present.  Lisa May and the Defendant built a home on the Property in 1989 using a $72,000.00 loan from the Farmers Home Administration ("FHA").  The loan was secured by a first mortgage on the

---

[1] Unless otherwise indicated, all references to "section" or "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., prior to amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

Property.  The Property has continuously been the Defendant's residence since the home was built in 1989.  In 1998 the Mays began experiencing financial difficulties and FHA foreclosed on its mortgage on October 9, 1998.  At that time the Debtor and her significant other, Donald Bagley ("Bagley"), purchased the Property at the foreclosure sale for $44,836.00, the amount remaining on the FHA loan, and took title in their names.  Pursuant to the terms of the Notice of Mortgagee's Sale, the Debtor and Bagley paid 10% of the sales price ($4,484.00) on the day of the foreclosure sale with the balance to be paid within 30 days when the deed was ready for delivery.  On December 2, 1998, the Debtor and Bagley mortgaged the Property as partial security for a loan to pay off the balance of the foreclosure sale price as well as some unrelated indebtedness of the Debtor.[2]  The loan was made by the Siwooganock Guaranty Savings Bank ("Siwooganock Bank").  It was made to the Debtor, Bagley and the Mays (the "1998 Loan"), and was entered into on December 2, 1998.  All four parties co-signed the note, which contained an escrow reserve for both taxes and insurance.  The balance of the foreclosure sale price was paid from the 1998 Loan.

The Debtor and the Defendant both testified that all four parties co-signed the 1998 Loan because the Mays could not then qualify for mortgage financing on their own, but that it was the intention of all the parties that the Mays would retain "ownership" of the Property and would take financial responsibility for the portion of the 1998 Loan that covered the Property. Furthermore, the Debtor testified that the Mays' financial difficulties were caused by her daughter's pattern of "cleaning out the checking account."  Accordingly, the Debtor and the

---

[2] In exchange for a loan in the amount of $85,000.00 the Debtor mortgaged three pieces of real estate: the Property, a tract of land adjacent to the Property and defined in the mortgage as Lot 1 ("Lot 1"), and a tract of land defined in the mortgage as the Down Home Motel property.

Defendant worked out an understanding whereby the Defendant would bring her enough cash each month to cover the portion of the loan payment that covered the Property. The Debtor kept a record of all payments received by the Defendant, deposited the cash into her own account, and paid the bank the full monthly payment with a check drawn against her personal account. The Debtor testified that although the Defendant was occasionally late with his monthly payment, he never missed a month.

On January 30, 2001, Bagley transferred his interest in the Property to the Debtor by a quitclaim deed that was notated as being a "non-contractual transfer (no consideration)." The New Hampshire Real Estate Transfer Tax Declaration of Consideration form showed the transfer as having been made for $0.00. On the Department of Revenue Administration Inventory of Property Transfer form the Debtor initially checked the box that the Property would not be her primary residence but crossed out that mark and replaced it by checking the box indicating the Property would be her primary residence; however, she and the Defendant both testified that the Property was always the Defendant's residence. The Debtor also testified that Bagley transferred the Property to her for no consideration so she and the Mays could take advantage of a decrease in interest rates by refinancing the 1998 Loan.

The Debtor and the Mays refinanced $40,749.67, the amount of the 1998 Loan which pertained to the Property and was still outstanding, with the Siwooganock Bank on August 13, 2001 (the "2001 Refinancing"). The Debtor, the Defendant and Lisa May were co-signers on the note for the 2001 Refinancing. The Debtor mortgaged the Property and Lot 1 as collateral for the 2001 Refinancing. The Debtor testified that she took part in the 2001 Refinancing because the Mays' credit rating still did not qualify them to get the loan on their own. The 2001

Refinancing also included a reserve escrow for taxes and insurance.  Sometime between the time of the 2001 Refinancing and the Transfer date the Mays were divorced.

On March 17, 2005, the Debtor transferred the Property to the Defendant by a quitclaim deed that was notated as a "noncontractual transfer" that was "exempt from transfer tax."  On March 22, 2006, the Defendant mortgaged the property and executed a note for $50,000.00 with Centex Home Equity Loan Company, LLC (the "Centex Loan").  The Centex Loan was in an amount sufficient to refinance the 2001 Refinancing that covered the outstanding indebtedness on the Property ($39,608.48), plus the amount needed to cover closing costs ($4,577.68), and a payment to Siwooganock Bank to pay off an automobile loan ($4,996.00).  The Centex Loan was made to the Defendant individually.  The appraisal report for the Centex Loan listed the sales price as a "refinance" and valued the Property at $92,000.00 as of December 17, 2004.

## III. DISCUSSION

In his complaint the Plaintiff seeks a determination from this Court that the Transfer was fraudulent under § 548(a)(1)(B).  As of the Petition Date § 548(a)(1)(B) stated the following:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property. . . that was made within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548(a)(1)(B).  In order to prevail the Plaintiff must prove the following four elements and he must prove them by a preponderance of the evidence:

5

      1.  The Debtor had an interest in the Property transferred.

      2.  The Debtor made the Transfer within one year of the Petition Date.

      3.  The Debtor did not receive reasonably equivalent value for the Transfer.

      4.  The Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer.

See id.; Dahar v. Jackson (In re Jackson), 318 B.R. 5, 23 (Bankr. D.N.H. 2004).

### A.  Undisputed Elements

Two of the elements required under § 548(a)(1)(B) are not disputed by the Defendant. There is no dispute that the Transfer took place on March 17, 2005, only forty-five days prior to the Petition Date. The Debtor was also insolvent at the time of the Transfer. The Plaintiff introduced the Debtor's bankruptcy petition which showed that her non-exempt assets were less than her debts on the date that she filed bankruptcy. In such a circumstance the Debtor is considered "insolvent" according to the Bankruptcy Code. 11 U.S.C. § 101(32)(A). At the trial, the Plaintiff asked the Debtor if her financial condition was the same on the date of the Transfer, to which the Debtor answered affirmatively. Therefore, the Court concludes that the Debtor was insolvent at the time of the Transfer. Hassan v. Middlesex County Nat'l Bank, 333 F.2d 838, 840 (1st Cir. 1964); Jackson, 318 B.R. at 16.

### B.  Disputed Elements

The Plaintiff must also prove that the Debtor had an interest in the Property and that the Debtor did not receive reasonably equivalent value for the Transfer. The Court will first look to whether the Debtor had an interest in the Property which would have become property of the estate on the Petition Date. If it is found that the Debtor had an interest in the Property then the Court will determine whether she received reasonably equivalent value.

**1. Debtor's Interest in the Property**

There is no question that as of the date of the Transfer the Debtor held legal title to the Property. What the Court must determine is whether the Debtor also held an equitable interest in the Property. The Bankruptcy Code provides a broad definition regarding what is considered property of the estate, but it specifically excludes "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest. . . ." 11 U.S.C. § 541(d). This exclusion was put in place to ensure that a trustee did not have more rights in property than a debtor had prior to the commencement of the case. Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co., 790 F.2d 1121, 1124 (4th Cir. 1986) quoting S. Rep. No. 989, 95th Cong., 2d Sess. 82. Therefore, if on the date of the Transfer the Debtor held only legal title to the Property but not equitable title, then the Property cannot be considered property of the estate. See Begier v. IRS, 496 U.S. 53, 59 (1990).

Determining what property rights the Debtor had as of the date of the Transfer is a matter of state law. Butner v. United States, 440 U.S. 48, 54 (1979). In this case the Court turns to New Hampshire state law to determine whether the Debtor had an equitable interest in the Property or whether she simply held the Property in trust for the Defendant. See In re Dameron, 155 F.3d 718, 722 (4th Cir. 1998) ("Our consideration of what constitutes an 'equitable interest' subject to exclusion from the bankruptcy estate under section 541(d) is a question of state law."); Connecticut Gen. Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612 (1st Cir. 1988); In re B.I. Fin. Serv. Group, Inc., 854 F.2d 351 (9th Cir. 1988); In re General Coffee Corp., 828 F.2d 699 (11th Cir. 1987); In re N.S. Garrott & Sons, 772 F.2d 462 (8th Cir. 1985).

The Court notes that there was no evidence presented by the Defendant to prove the existence of an express trust between him and the Debtor.  Therefore, the Court looks to the New Hampshire law on implied trusts to determine whether or not a trust relationship existed between the Debtor and the Defendant.  New Hampshire law states:

> No trust concerning lands, <u>except as may arise or result by implication of law</u>, shall be created or declared unless by an instrument signed by the party creating the same or by his attorney.

N.H. R.S.A. 477:17 (emphasis added).  When determining whether a trust has arisen or resulted by implication of law, the statute of frauds does not apply.  <u>Clark v. Lovelace</u>, 102 N.H. 97, 99 (1959); <u>French v. Pearson</u>, 94 N.H. 18, 21 (1946) ("The Statute [of Frauds] has no application in cases of implied trusts.").  Therefore the Court may consider evidence of an oral agreement when determining whether or not a trust exists.

An implied trust which may arise by implication of law is a resulting trust.  Under New Hampshire law a traditional resulting trust occurs when one party ("Party A") provides the consideration for a conveyance of land and instructs that title be taken in the name of a third party ("Party B").[3]  <u>Whelan v. Robinson</u>, 117 N.H. 1032, 1036 (1977); <u>Bailey v. Scribner</u>, 97 N.H. 65, 68 (1951); <u>Foley v. Foley</u>, 90 N.H. 281, 282 (1939).  However a resulting trust may also arise when Party A borrows money from Party B for the purchase of land and title to the land is conveyed to Party B.[4]  <u>French</u>, 98 N.H. at 19-20; <u>see</u> <u>Prescott v. Jenness</u>, 77 N.H. 84, 88 (1913); <u>Crowley v. Crowley</u>, 72 N.H. 241, 244 (1903).  In the latter case the money to purchase the land originates from Party B, who also takes title to the land, but he takes that title subject to

---

[3] Party A pays money to seller for land and seller conveys title to the land to Party B.

[4] Party A borrows money from Party B to purchase land.  Party A pays the money to seller and seller conveys title to Party B.

8

a resulting trust in favor of Party A.  The trust is formed at the time that the deed to the land is delivered to Party B, Chamberlin v. Chamberlin, 116 N.H. 368, 371 (1976), and may be "implied from the conduct and the acts of the parties."  French, 98 N.H. at 20; see Pleakas v. Juris, 107 N.H. 393 (1966).  A determination that a resulting trust exists is strengthened if Party A already has an equitable title in the property.  Id.

     The evidence in this case establishes the second type of resulting trust.  Here, Defendant borrowed two things from the Debtor at the time that title was transferred from FHA to the Debtor in 1998.  Primarily, the Defendant borrowed the $4,484.00 down payment made by the Debtor on October 9, 1998.  He also borrowed the Debtor's good credit rating which was necessary in order to obtain the 1998 Loan.  The undisputed testimony at trial establishes that the Debtor acquired title to the Property for the benefit of the Defendant and held it for him in a resulting trust.

     Looking beyond the actions of October 9, 1998, the Court further examines the subsequent actions of the Debtor and Defendant.  See Chamberlin, 116 N.H. at 371 ("The conduct of the parties after the conveyance with relation to the possession of the realty, its benefits and burdens also corroborated the fact that a trust was intended . . .").  The Defendant remained in continuous possession of the Property, using it as his home right up through the time of the Transfer.  Further, the Defendant took over sole financial responsibility for the Property on December 2, 1998, the day that the 1998 Loan was given.  By virtue of the Siwooganock Bank providing the Debtor, Bagley and the Mays with an $85,000.00 loan the Debtor was made whole for the down payment she made to FHA.  Both the Debtor and the Defendant testified that as of the time the 1998 Loan came into being the Defendant took financial responsibility for

payment of the entire amount owed for the purchase of the Property.  The acts and conduct of the Debtor and the Defendant after October 9, 1998, confirm that the Debtor held the Property for the Defendant in a resulting trust.

The evidence admitted at trial also establishes that a confidential relationship existed between the Debtor and the Defendant both at the time the trust was created and at the time of the Transfer.  See Kachanian v. Kachanian, 100 N.H. 135, 137 (1956).  When two parties stand in a confidential relationship, particularly a familial relationship, there is a presumption that the payer of the consideration, the Defendant in this case, has given a gift to the one who was granted legal title, here that being the Debtor.  Chamberlin, 116 N.H. at 370-71.  This presumption is weaker when the relationship involves in-laws and can always be rebutted by the evidence.  Id.  In this case the undisputed evidence established that both the Debtor and the Defendant always considered the Property to be the Defendant's, and that the payments by the Defendant were to reimburse the Debtor for the actual mortgage payments on the Property.  Accordingly, any presumption of a gift has been rebutted.

Therefore, having found all of the elements required to establish a resulting trust, the Court concludes that there was a resulting trust in favor of the Defendant.  The resulting trust came into being on the date that the Debtor purchased the Property from FHA and from that point forward the Debtor held the Property in trust for the Defendant.  The Defendant paid off the $4,484.00 loaned to him by the Debtor when he took full responsibility for the entire $44,836.00 note, which covered the total cost of the Property, on December 2, 1998, and began making payments through the Debtor.  The Defendant continued to maintain full responsibility after the 2001 Financing, which was done to take advantage of a change in interest rates and

therefore had no effect on the existence of the resulting trust.  At the time of the Transfer in 2005, shortly before the Debtor filed her bankruptcy petition, the Debtor had only legal title to the Property and no equitable title.  Because she had no equitable, title the Property is not considered property of the estate and therefore the Plaintiff may not avoid the Transfer under § 548(a)(1)(B).[5]

### 2. Reasonably Equivalent Value

Having found a resulting trust in favor of the Defendant, an inquiry into reasonably equivalent value is moot and therefore the Court need not address it.

## IV.  CONCLUSION

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

Entered at Manchester, New Hampshire.


Dated: May 2, 2007                      /s/ J. Michael Deasy
                                        J. Michael Deasy
                                        Bankruptcy Judge

---

[5] In his post-trial memorandum the Plaintiff asserts that, should the Court find a constructive trust in favor of the Defendant, such a trust is considered a "claim" against the estate and therefore the Transfer would still be avoidable.  This assertion goes against settled law.  The First Circuit Court of Appeals has stated "[w]hen a debtor is in possession of property impressed by a trust, express or constructive, the bankrupt estate holds the property subject to the outstanding interest of the beneficiaries."  Connecticut, 838 F.2d at 618; see also In re Reider, 177 B.R. 412, 415 (Bankr. D. Me. 1994) (finding that the First Circuit recognizes that constructive trusts provide a beneficiary rights superior to those of the bankruptcy estate); In re Mill Concepts, 123 B.R. 938, 944-45 (Bankr. D. Mass. 1991) (recognizing that a constructive trust beneficiary has rights superior to that of a bankruptcy estate.)